REGAN, Judge.
Plaintiffs, Irvin and Alma Jasmine Morton, as parents instituted this suit against the defendant, Ben Rome and his insurer endeavoring to recover the sum of $24,000 as damages for injuries to and the death of their minor son Joseph and injuries to their minor sons Glenn and Charles, which resulted from burns incurred on June 7, 1952, when a small can of gasoline stored in defendant’s bus was ignited by one of several boys who had entered therein.
The defendants pleaded the exceptions of no cause or right of action, which were overruled, and then answered and denied any negligence on the part of Ben Rome or John Williams, who, it is emphasized, was an independent contractor engaged in repairing the bus a short time before the accident, and the defendants further asserted that the death of Joseph and the injuries to Glenn and Charles were caused by their own negligence in entering the closed bus, together with two other children, one of whom killed *194 a bee, set fire to it and dropped it into a bucket of gasoline, causing the conflagration that resulted in the death and injuries which form the subject matter of this suit.
In the alternative the defendants pleaded the contributory negligence of the children and of their parents, the plaintiffs.
From a judgment in favor of the defendants and against the plaintiffs, dismissing their suit, they have prosecuted this appeal.
The defendants have reurged their exceptions of no cause or right of action which were overruled in the lower court and which were predicated on the hypothesis that John Williams was an independent contractor and therefore he was the proper party defendant herein and not Ben Rome or his insurer. Mechanically, we initially consider the exceptions; however, we prefer when possible to consider the case on its merits, especially when the result which we have agreed should be reached is the same in either event.
The record reveals that Ben Rome operates a bus line for the purpose of transporting laborers from Vacherie, Louisiana, to various industrial plants in the City of New Orleans. John Williams was one of the laborers who lived in Vacherie and worked in New Orleans and was transported by one of Ben Rome’s buses. He received free transportation to and from Vacherie by agreeing to operate the bus for Rome. In the course of one of these trips the bus developed mechanical trouble which Williams discussed with Rome, and it was agreed that Williams would repair the bus for the sum of $18, the parts to be furnished by the owner thereof. The bus was removed to the yard of Williams’ home where the plaintiffs also resided.
On June 7, 1952, Williams was in the process of repairing the bus when he discovered that he needed additional parts. He had a small bucket or coffee can containing gasoline near where he was working which he used for the purpose of washing his hands and parts of the engine. He related that before leaving the bus to procure these parts he put everything ■ inside the bus, including the container of gasoline and securely closed the door. It appears that the door on the right side of the bus was equipped with an automatic device which caused it to lock when the door was closed. Williams said that in order to facilitate re-entering the bus, he left an opening of approximately an inch or two at the top of the window on the left or driver’s side of the bus and that he used a stick which he would insert through this opening in order to trip the device and reopen the door.
In any event, after Williams had locked the bus as above set forth, he departed to procure some additional parts for the engine. During his absence Brice Harris, a boy 11 years of age when the event occurred, but 15 years old at the time of the trial, testified that after Williams left the situs of the bus, they rolled a tire to the side of the bus and he stood on it and pushed a stick or pole through the small opening at the top of the window and thus tripped the lock and opened the door.
He then related that Joseph Morton, age 10 years, Charles Morton, age 6, Glenn Morton, age 4, Gregory Harris, age 6, and he entered the bus; shortly thereafter the boys saw a bee which they caught and decided to burn. Brice held the bee over the can of gasoline and one of the other boys struck a match and held it to the bee until the match began to burn his hand, at which moment the bee or the match or both were dropped in the gasoline causing the conflagration which resulted in the death of Joseph Morton and Gregory Harris [1] and injuries to Charles Morton, Glenn Morton, and Brice Harris.
While the method of entry into the bus by the children has been disputed, we find *195 from the record that the method related by Brice Harris is the most plausible and credible.
The only question posed for our consideration is whether defendants have been guilty of any negligence which may reasonably be said to have been the cause of the injuries and deaths resulting from this accident.
Defendants maintain that the facts are insufficient to establish the existence of actionable negligence on their part.
The plaintiffs, on the other hand, insist that the defendants failed to exercise ordinary care in leaving an attractive nuisance or bus in a yard where they knew several or more children played, whose curiosity was apt to be excited and actually allured by this type of conveyance.
The trial judge in his written reasons for judgment expressed the opinion that there was no negligence exemplified on the part of Ben Rome or John Williams, and our analysis of the record discloses no error in his conclusions.
Various theories and reasons have been advanced and discussed by the courts as a justification for the application of the attractive nuisance doctrine. The fundamental concept of the rationale of the doctrine appears to be that the offending condition, circumstance, appliance, or machine, although its danger is apparent or obvious to those who have attained the years of discretion, is so enticing, alluring, and calculated to excite the curiosity of childish instincts or propensities so as to induce them to approach, mount, or use it and that this inherent attractiveness amounts to an implied invitation to such children.[2]
The doctrine of reasonable anticipation applies with particular emphasis where the owner or his representative knows that children reside in the immediate vicinity and are accustomed to gather about or play with the object in question. Indeed it has been considered sufficient that the owner thereof either knows or should have known that children are likely to be attracted to the place where the dangerous instrumentality is parked, stored, or maintained.
We entertain little doubt that a bus is attractive to children of tender years, but whether this particular bus which had been rendered temporarily inoperative was likewise dangerous per se is a question which we feel that it is unnecessary to answer for the reason that the children were not injured by the bus or any part thereof. The accident was caused by the ignition of gasoline contained in a can which had been stored in an attractive conveyance. Therefore, to reiterate, the only question which is posed for our consideration is whether the defendants had been guilty of negligence in storing this gasoline in a bus which was attractive to children of tender years and which may reasonably be said to have been the legal cause of the injuries to the children.
The care required under the conditions which we have enumerated hereinabove is measured by the yardstick of the reasonable man, that is, care men of ordinary prudence would exercise under the same or similar circumstances. The danger which it was the duty of Williams to guard against was such as reasonably might have been anticipated. Williams before departing from the bus, placed the container of gasoline therein and locked it, which was about all that could be expected of a reasonably prudent man under these circumstances.
It was not the duty of Williams, as we see it, to so lock the bus as to render entry therein almost impossible under every conceivable circumstance. It is only the *196 naturally to be expected acts and results against which he must guard. While it is true that the defendants were charged with knowledge of ordinary childish conduct, and they were bound to anticipate consequences resulting from such conduct, they were not bound to anticipate consequences resulting from the unusual or extraordinary conduct or the precocious ingenuity displayed by Brice Harris in gaining entry to the bus wherein the gasoline was stored.
In view of the foregoing rationalization we are of the opinion that Rome and Williams were not at fault for the deaths and injuries to these children.
It is interesting to note that John Williams was never made a party defendant herein and the evidence reveals that Williams may have occupied the status of an independent contractor in view of the fact that he agreed to repair Rome’s bus for the price of $18. However, since we have concluded that neither the actions of Rome nor Williams were negligence under the circumstances, we find it unnecessary to consider this aspect of the case which was raised by the defendants in pleading the exceptions of no cause or right of action, which we referred to at the inception of this opinion.
This was a tragic accident, and we have the deepest sympathy for the bereaved parents, and therefore we find it necessary because of our feelings for these children to remind ourselves that:
“There is danger in dealing with the question of liability for injury to children of confounding legal obligations with those sentiments which are independent of the law, and rest merely on grounds of feeling, or moral consideration.” [3]
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. No action was instituted by bis parents.

. Westerfield v. Levis Bros., 1891, 43 La.Ann. 63, 9 So. 52; See also 5 Tulane Law Rev. 151 (1930).

. Peters v. Pearce, 1920, 146 La. 902, 905, 84 So. 198, 199.